**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| S&S HEALTHCARE STRATEGIES, LTD.<br>1385 Kemper Meadow Drive<br>Cincinnati, Ohio 45240 | : <br> : <br> : <br> : | Case No. 1:20-cv-00198<br><br>Judge |
| S&S HC HOLDINGS, LLC<br>3414 Peachtree Road, Suite 1600<br>Atlanta, Georgia 30326 | : <br> : <br> : <br> : | **ANSWER OF DEFENDANT'S TO**<br>**PLAINTIFF'S COMPLAINT** |
|     Plaintiffs-Counterclaim Defendants, | : <br> : | *and* |
| v. | : <br> : | **COUNTERCLAIM AND THIRD**<br>**PARTY COMPLAINT** |
| S&S HOLDCO, INC.<br>6965 Rock Springs Drive<br>Liberty Township, Ohio 45011 | : <br> : <br> : <br> : | |
| RICHARD D. ROSTOWSKY<br>4 Magnolia Hill<br>West Hartford, Connecticut 06117 | : <br> : <br> : <br> : | |
| GAIL L. SCHWEITZER<br>6965 Rock Springs Drive<br>Liberty Township, Ohio 45011 | : <br> : <br> : <br> : | |
|     Defendants-Counterclaim and Third Party<br>    Plaintiffs, | : <br> : <br> : | |
| v. | : <br> : | |
| HOWARD BUFF<br>103 Wellwood Avenue<br>Saint Johns, FL 32259 | : <br> : <br> : <br> : | |
| JOHN WALKER<br>40 Astra Way<br>Saint Johns, Florida 32259 | : <br> : <br> : <br> : | |
| VINCENT ESPOSITO<br>167 MacGregor Drive<br>Stamford, CT 06902 | : <br> : <br> : <br> : <br> : | |

1

STEVEN P. MCGRATH
3953 Land O Lakes Drive NE
Atlanta, GA 30342

    Third Party Defendants.

## ANSWER

Now comes, S&S Holdco, Inc. ("Holdco"), Richard D. Rostowsky ("Rostowsky") and Gail L. Schweitzer ("Schweitzer")(jointly "Defendants") and state as follows for their Answer in reply to the numbered paragraphs of Plaintiff's Complaint:

## PARTIES

1.     Defendants admit the allegations in paragraph 1 of the Complaint.

2.     Defendants admit the allegations in paragraph 2 of the Complaint.

3.     Defendants admit the allegations in paragraph 3 of the Complaint.

4.     Defendants admit that Rostowsky resides at 4 Magnolia Hill, West Hartford, Connecticut 06117. Defendants deny each and every other allegation set forth in paragraph 4 of the Complaint which is not specifically admitted herein.

5.     Defendants admit that Schweitzer resides at 6965 Rock Springs Drive, Liberty Township, Ohio 45011. Defendants deny each and every other allegation set forth in paragraph 5 of the Complaint which is not specifically admitted herein.

6.     Paragraph 6 of the Complaint does not call for a response and is otherwise denied.

## JURISDICTION AND VENUE

7.     Defendants admit that Seller is subject to the personal jurisdiction of the Ohio Court of Common Pleas.  Defendants deny each and every other allegation set forth in paragraph 7 of the Complaint which is not specifically admitted herein.

8.     Defendants admit that Rostowsky is subject to the personal jurisdiction of Ohio

courts as a result of transacting business in Ohio. Defendants deny each and every other allegation in Paragraph 8 of the Complaint which is not specifically admitted herein.

9. Defendants admit that Schweitzer is subject to the personal jurisdiction of Ohio courts as a result of transacting business in Ohio. Defendants deny each and every other allegation set forth in paragraph 9 of the Complaint which is not specifically admitted herein.

10. Defendants deny the allegations in paragraph 10 of the Complaint.

## FACTUAL BACKGROUND

11. Defendants admit the allegations in paragraph 11 of the Complaint.

12. Defendants admit the allegations in paragraph 12 of the Complaint.

13. Defendants admit the allegations in paragraph 13 of the Complaint.

14. The Plaintiff "reserved" the allegations in paragraph 14 of the Complaint. Defendants reserve the right to respond to paragraph 14 of the Complaint and otherwise deny paragraph 14 of the Complaint.

15. Defendants admit that employees of Company placed financial and other business information pertaining to the Company into a Data Room for Purchaser's review. Defendants deny each and every other allegation set forth in paragraph 15 of the Complaint which is not specifically admitted herein.

16. Defendants admit that Jeffrey G. Stagnaro, Esq. represented Rostowsky and Schweitzer in the negotiations of the sale of their membership interest in the Company. Defendants deny each and every other allegation set forth in paragraph 16 of the Complaint which is not specifically admitted herein.

17. Defendants admit that employees of Company placed financial and other business information pertaining to the Company into a Data Room for Purchaser's review. Defendants

3

deny each and every other allegation set forth in paragraph 17 of the Complaint which is not specifically admitted herein.

18. Defendants deny the allegations in paragraph 18 of the Complaint as the obligations of the Seller Group are determined by and set forth in the applicable agreements.

19. Defendants deny the allegations in paragraph 19 of the Complaint as the definitions of various terms, including the term "Losses", are determined by and set forth in the applicable agreements between the parties.

20. Defendants deny the allegations in paragraph 20 of the Complaint as the obligations of the Seller Group are determined by and set forth in the applicable agreements.

21. For lack of knowledge, Defendants deny the allegations set forth in paragraph 21 of the Complaint.

22. For lack of knowledge, Defendants deny the allegations set forth in paragraph 22 of the Complaint.

23. Defendants admit that the "Closing" of the transactions contemplated by the Acquisition Agreement occurred on August 2, 2018 with an effective date of 11:59 pm, August 1, 2018. Defendants deny each and every other allegation set forth in paragraph 23 of the Complaint which is not specifically admitted herein.

24. Defendants admit that the letter dated November 6, 2018 from Plaintiffs' outside legal counsel speaks for itself. Defendants deny each and every other allegation set forth in paragraph 24 of the Complaint which is not specifically admitted herein.

25. Defendants admit that the letter dated November 15, 2018 speaks for itself. Defendants deny each and every other allegation set forth in paragraph 25 of the Complaint which is not specifically admitted herein.

26. Defendants admit that the letter dated December 31, 2018 speaks for itself.

4

Defendants deny each and every other allegation set forth in paragraph 26 of the Complaint which is not specifically admitted herein.

27.      Defendants deny the allegations set forth in paragraph 27 of the Complaint.

28.      Defendants deny the allegations set forth in paragraph 28 of the Complaint.

29.      Plaintiff's Complaint speaks for itself. Defendants deny each and every other allegation set forth in paragraph 29 of the Complaint which is not specifically admitted herein.

30.      Defendants deny the allegations set forth in paragraph 30 of the Complaint.

**<u>COUNT ONE</u>**
**Breach of Contract**
**(Riverstone)**

31.      In response to paragraph 31 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

32.      Defendants deny the allegations set forth in paragraph 32 of the Complaint.

33.      Defendants deny the allegations set forth in paragraph 33 of the Complaint.

34.      Defendants deny the allegations set forth in paragraph 34 of the Complaint.

35.      Defendants deny the allegations set forth in paragraph 35 of the Complaint.

36.      Defendants deny the allegations set forth in paragraph 36 of the Complaint.

37.      Defendants deny the allegations set forth in paragraph 37 of the Complaint.

38.      Defendants deny the allegations set forth in paragraph 38 of the Complaint.

39.      Defendants deny the allegations set forth in paragraph 39 of the Complaint.

40.      Defendants deny the allegations set forth in paragraph 40 of the Complaint.

41.      Defendants deny the allegations set forth in paragraph 41 of the Complaint.

42.      For lack of knowledge, Defendants deny the allegations set forth in paragraph 42

of the Complaint.

43.     Defendants admit that the DOL commenced a complaint against Riverstone and affiliated parties in the United States District Court for the Central District of California (the **"Riverstone Receivership Proceeding"**), captioned R. Alexander Acosta, Secretary of Labor, United States Department of Labor v. Riverstone Capital LLC et al., Case No. CV19-778-CAS(MAAx).  Defendants deny each and every other allegation set forth in paragraph 43 of the Complaint which is not specifically admitted herein.

44.     The complaint filed by the DOL speaks for itself. Defendants deny each and every other allegation set forth in paragraph 44 of the Complaint which is not specifically admitted herein.

45.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 45 of the Complaint.

46.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 46 of the Complaint.

47.     Defendants deny the allegations set forth in paragraph 47 of the Complaint.

48.     Defendants deny the allegations set forth in paragraph 48 of the Complaint.

49.     Defendants deny the allegations set forth in paragraph 49 of the Complaint.

50.     Defendants deny the allegations set forth in paragraph 50 of the Complaint.

**COUNT TWO**
**Breach of Contract**
**(Paradigm)**

51.     In response to paragraph 51 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

52.     Defendants deny the allegations set forth in paragraph 52 of the Complaint.

53.     Defendants deny the allegations set forth in paragraph 53 of the Complaint.

54.     Defendants deny the allegations set forth in paragraph 54 of the Complaint.

55.     Defendants deny the allegations set forth in paragraph 55 of the Complaint.

56.     Defendants deny the allegations set forth in paragraph 56 of the Complaint.

57.     Defendants deny the allegations set forth in paragraph 57 of the Complaint.

58.     Defendants deny the allegations set forth in paragraph 58 of the Complaint.

59.     Defendants deny the allegations set forth in paragraph 59 of the Complaint.

60.     Defendants deny the allegations set forth in paragraph 60 of the Complaint.

61.     Defendants deny the allegations set forth in paragraph 61 of the Complaint.

62.     Defendants deny the allegations set forth in paragraph 62 of the Complaint.

63.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 63 of the Complaint.

64.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 64 of the Complaint.

65.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 65 of the Complaint.

66.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 66 of the Complaint.

67.     Defendants deny the allegations set forth in paragraph 67 of the Complaint.

68.     Defendants deny the allegations set forth in paragraph 68 of the Complaint.

69.     Defendants deny the allegations set forth in paragraph 69 of the Complaint.

**COUNT THREE**
**Breach of Contract**
**(PATH)**

7

70.     In response to paragraph 70 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

71.     Defendants deny the allegations set forth in paragraph 71 of the Complaint.

72.     Defendants deny the allegations set forth in paragraph 72 of the Complaint.

73.     Defendants deny the allegations set forth in paragraph 73 of the Complaint.

74.     Defendants deny the allegations set forth in paragraph 74 of the Complaint.

75.     Defendants deny the allegations set forth in paragraph 75 of the Complaint.

76.     Defendants deny the allegations set forth in paragraph 76 of the Complaint.

77.     Defendants deny the allegations set forth in paragraph 77 of the Complaint.

78.     Defendants deny the allegations set forth in paragraph 78 of the Complaint.

79.     Defendants deny the allegations set forth in paragraph 79 of the Complaint.

80.     Defendants deny the allegations set forth in paragraph 80 of the Complaint.

81.     Defendants deny the allegations set forth in paragraph 81 of the Complaint.

82.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 83 of the Complaint.

83.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 83 of the Complaint.

84.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 84 of the Complaint.

85.     Defendants deny the allegations set forth in paragraph 85 of the Complaint.

86.     Defendants deny the allegations set forth in paragraph 86 of the Complaint.

87.     Defendants deny the allegations set forth in paragraph 87 of the Complaint.

**COUNT FOUR**
**Breach of Contract**

8

**(Material Contracts)**

88.     In response to paragraph 88 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

89.     Defendants deny the allegations set forth in paragraph 89 of the Complaint.

90.     The Plaintiff "reserved" the allegations in paragraph 90 of the Complaint. Defendants reserve the right to respond to paragraph 90 of the Complaint and otherwise deny paragraph 90 of the Complaint.

91.     Defendants deny the allegations set forth in paragraph 91 of the Complaint.

92.     The Plaintiff "reserved" the allegations in paragraph 92 of the Complaint. Defendants reserve the right to respond to paragraph 92 of the Complaint and otherwise deny paragraph 92 of the Complaint.

93.     Defendants deny the allegations set forth in paragraph 93 of the Complaint.

94.     Defendants deny the allegations set forth in paragraph 94 of the Complaint.

95.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 95 of the Complaint.

96.     Defendants deny the allegations set forth in paragraph 96 of the Complaint.

97.     Defendants admit that a demand for indemnification has been made.  Defendants deny each and every allegation in paragraph 97 of the Complaint which is not specifically admitted herein.

98.     Defendants admit that there is no obligation or basis for Defendants to indemnify Plaintiffs and that accordingly no indemnification has been made. Defendants deny each and every allegation in paragraph 98 of the Complaint which is not specifically admitted herein.

99.     Defendants deny the allegations set forth in paragraph 99 of the Complaint.

100. Defendants deny the allegations set forth in paragraph 100 of the Complaint.

## COUNT FIVE
### Breach of Contract
### (IRS Form 1099 Reporting)

101. In response to paragraph 101 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

102. Defendants admit that the Company has assisted customers with the customer's filing of the customer's IRS Form 1099 to the Internal Revenue Service. Defendants deny each and every allegation in paragraph 102 of the Complaint which is not specifically admitted herein.

103. Defendants deny the allegations set forth in paragraph 103 of the Complaint.

104. Defendants deny the allegations set forth in paragraph 104 of the Complaint.

105. Defendants deny the allegations set forth in paragraph 105 of the Complaint.

106. Defendants admit that the Company had assisted customers with submitting corrected 1099s.  Defendants deny each and every allegation in paragraph 106 of the Complaint which is not specifically admitted herein.

107. Defendants deny the allegations set forth in paragraph 107 of the Complaint.

108. Defendants deny the allegations set forth in paragraph 108 of the Complaint.

109. Defendant admit that no risks or potential liabilities were facing the Company as a result of any IRS reporting errors. Defendants deny each and every allegation in paragraph 109 of the Complaint which is not specifically admitted herein.

110. Defendants deny the allegations set forth in paragraph 110 of the Complaint.

111. Defendants deny the allegations set forth in paragraph 111 of the Complaint.

112. Defendants deny the allegations set forth in paragraph 112 of the Complaint.

113. The Plaintiff "reserved" the allegations in paragraph 113 of the Complaint.

Defendants reserve the right to respond to paragraph 113 of the Complaint and otherwise deny paragraph 113 of the Complaint.

114.     The Plaintiff "reserved" the allegations in paragraph 114 of the Complaint. Defendants reserve the right to respond to paragraph 114 of the Complaint and otherwise deny paragraph 114 of the Complaint.

115.     The Plaintiff "reserved" the allegations in paragraph 115 of the Complaint. Defendants reserve the right to respond to paragraph 115 of the Complaint and otherwise deny paragraph 115 of the Complaint.

116.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 116 of the Complaint.

117.     Defendants deny the allegations set forth in paragraph 117 of the Complaint.

118.     Defendants deny the allegations set forth in paragraph 118 of the Complaint.

119.     Defendants deny the allegations set forth in paragraph 119 of the Complaint.

120.     Defendants deny the allegations set forth in paragraph 120 of the Complaint.

121.     The Plaintiff "reserved" the allegations in paragraph 121 of the Complaint. Defendants reserve the right to respond to paragraph 121 of the Complaint and otherwise deny paragraph 121 of the Complaint.

122.     The Plaintiff "reserved" the allegations in paragraph 122 of the Complaint. Defendants reserve the right to respond to paragraph 122 of the Complaint and otherwise deny paragraph 122 of the Complaint.

123.     The Plaintiff "reserved" the allegations in paragraph 123 of the Complaint. Defendants reserve the right to respond to paragraph 123 of the Complaint and otherwise deny paragraph 123 of the Complaint.

## COUNT SIX
**Breach of Contract**
**(Section 111 Reporting)**

124.    In response to paragraph 124 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

125.    Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (the **"MMSEA"**) has established reporting requirements. Defendants deny each and every allegation in paragraph 125 of the Complaint which is not specifically admitted herein.

126.    Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (the **"MMSEA"**) has established reporting requirements. Defendants deny each and every allegation in paragraph 126 of the Complaint which is not specifically admitted herein.

127.    Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (the **"MMSEA"**) has various purposes. Defendants deny each and every allegation in paragraph 127 of the Complaint which is not specifically admitted herein.

128.    Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (the **"MMSEA"**) authorizes various actions by CMS. Defendants deny each and every allegation in paragraph 127 of the Complaint which is not specifically admitted herein.

129.    Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (the **"MMSEA"**) has established reporting requirements. Defendants deny each and every allegation in paragraph 129 of the Complaint which is not specifically admitted herein.

130.    Defendants deny the allegations set forth in paragraph 130 of the Complaint.

131.    Defendants deny the allegations set forth in paragraph 131 of the Complaint.

132.    Defendants deny the allegations set forth in paragraph 132 of the Complaint.

133.    Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (the

"**MMSEA**") has established reporting requirements. Defendants deny each and every allegation in paragraph 133 of the Complaint which is not specifically admitted herein.

134.    Defendants deny the allegations set forth in paragraph 134 of the Complaint.

135.    Defendants deny the allegations set forth in paragraph 135 of the Complaint.

136.    Defendants deny the allegations set forth in paragraph 136 of the Complaint.

137.    Defendants deny the allegations set forth in paragraph 137 of the Complaint.

138.    Defendants deny the allegations set forth in paragraph 138 of the Complaint.

139.    Defendants deny the allegations set forth in paragraph 139 of the Complaint.

140.    Defendants deny the allegations set forth in paragraph 140 of the Complaint.

141.    Defendants deny the allegations set forth in paragraph 141 of the Complaint.

142.    Defendants deny the allegations set forth in paragraph 142 of the Complaint.

143.    The Plaintiff "reserved" the allegations in paragraph 143 of the Complaint. Defendants reserve the right to respond to paragraph 143 of the Complaint and otherwise deny paragraph 143 of the Complaint.

144.    Defendants deny the allegations set forth in paragraph 144 of the Complaint.

145.    Defendants deny the allegations set forth in paragraph 145 of the Complaint.

146.    For lack of knowledge, Defendants deny the allegations set forth in paragraph 134 of the Complaint.

147.    Defendants deny the allegations set forth in paragraph 147 of the Complaint.

148.    Defendants deny the allegations set forth in paragraph 148 of the Complaint.

149.    The Plaintiff "reserved" the allegations in paragraph 149 of the Complaint. Defendants reserve the right to respond to paragraph 149 of the Complaint and otherwise deny paragraph 149 of the Complaint.

150.     The Plaintiff "reserved" the allegations in paragraph 150 of the Complaint. Defendants reserve the right to respond to paragraph 150 of the Complaint and otherwise deny paragraph 150 of the Complaint.

151.     The Plaintiff "reserved" the allegations in paragraph 151 of the Complaint. Defendants reserve the right to respond to paragraph 151 of the Complaint and otherwise deny paragraph 123 of the Complaint.

## COUNT SEVEN
### Breach of Contract
### (Stop Loss Reporting)

152.     In response to paragraph 152 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

153.     Defendants admit that prior to the Closing the Company's business included providing "stop loss" services to certain customers. Defendants deny each and every allegation in paragraph 153 of the Complaint which is not specifically admitted herein.

154.     Defendants admit that providing "stop loss" services to certain customers can have various purposes. Defendants deny each and every allegation in paragraph 154 of the Complaint which is not specifically admitted herein.

155.     Defendants deny the allegations set forth in paragraph 155 of the Complaint.

156.     Defendants deny the allegations set forth in paragraph 156 of the Complaint.

157.     Defendants deny the allegations set forth in paragraph 157 of the Complaint.

158.     Defendants deny the allegations set forth in paragraph 158 of the Complaint.

159.     The Plaintiff "reserved" the allegations in paragraph 159 of the Complaint. Defendants reserve the right to respond to paragraph 159 of the Complaint and otherwise deny paragraph 159 of the Complaint.

160.    Defendants deny the allegations set forth in paragraph 160 of the Complaint.

161.    For lack of knowledge, Defendants deny the allegations set forth in paragraph 161 of the Complaint.

162.    Defendants deny the allegations set forth in paragraph 162 of the Complaint.

163.    Defendants deny the allegations set forth in paragraph 163 of the Complaint.

164.    Defendants deny the allegations set forth in paragraph 164 of the Complaint.

165.    Defendants deny the allegations set forth in paragraph 165 of the Complaint.

## COUNT EIGHT
### Breach of Contract
### (Three Rivers Litigation)

166.    In response to paragraph 166 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

167.    Defendants admit that in November 2017 the Company filed a lawsuit against Three Rivers Provider Network, Inc. Defendants deny each and every allegation set forth in paragraph 167 of the Complaint which is not specifically admitted herein.

168.    Defendants admit that the lawsuit was captioned S&S Healthcare Strategies Ltd. v. Three Rivers Provider Network, Inc., Case No. 1:17-CV-00783. Defendants deny each and every allegation set forth in paragraph 168 of the Complaint which is not specifically admitted herein.

169.    Defendants admit Three Rivers filed responsive pleadings and asserted counterclaims. Defendants deny each and every allegation in paragraph 169 of the Complaint which is not specifically admitted herein.

170.    Defendants admit that prior to the Closing the SS&P Law Firm represented Company as its counsel of record in the Three Rivers Litigation. Defendants deny each and every

allegation set forth in paragraph 170 of the Complaint which is not specifically admitted herein.

171.    Defendants admit that the Company assigned all rights, liabilities and obligations including any settlement and/ or judgment the Three Rivers Litigation, including but not limited to the exclusive right to control and direct the Three Rivers Litigation. Defendants deny each and every allegation set forth in paragraph 171 of the Complaint which is not specifically admitted herein.

172.    Defends admit that subject to the terms and limitations of Acquisition Agreement, including but not limited to Plaintiffs' compliance with the terms of the Acquisition agreement and all transaction documents, the Seller Group would indemnify the Company in the Three Rivers Litigation.  Defendants deny each and every allegation set forth in paragraph 172 of the Complaint which is not specifically admitted herein.

173.    Defendants deny the allegations set forth in paragraph 173 of the Complaint.

174.    Defendants deny the allegations set forth in paragraph 174 of the Complaint.

175.    Defendants admit that Plaintiffs had no interest in and to any aspect of the Three Rivers Litigation.  Defendants deny each and every allegation set forth in paragraph 175 of the Complaint which is not specifically admitted herein.

176.    Defendants admit that, recognizing that Company had no interest in any aspect of the Three Rivers Litigation, Seller was substituted for the Company as the named plaintiff in the Three Rivers Litigation.  Defendants also admit that the SS&P Law Firm only served as the Company's counsel in the Three Rivers Litigation up until the date of the Closing.   Defendants deny each and every allegation set forth in paragraph 176 of the Complaint which is not specifically admitted herein.

177.    Defendants deny the allegations set forth in paragraph 177 of the Complaint.

178.     Defendants admit that Plaintiffs sent correspondence dated February 25, 2019 to counsel for the Seller Group and that the correspondence speaks for itself.  Defendants deny each and every allegation set forth in paragraph 178 of the Complaint which is not specifically admitted herein.

179.     Defendants admit that Plaintiffs have breached the terms of the Acquisition Agreement and the Transaction Documents barring any right that the Plaintiffs would potentially have to indemnification, if any said right had actually existed. Defendants deny each and every allegation set forth in paragraph 179 of the Complaint which is not specifically admitted herein.

180.     Defendants deny the allegations set forth in paragraph 180 of the Complaint.

181.     Defendants deny the allegations set forth in paragraph 181 of the Complaint.

**COUNT NINE**
**Breach of Contract**
**(Georgia Customer)**

182.     In response to paragraph 182 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

183.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 183 of the Complaint.

184.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 184 of the Complaint.

185.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 185 of the Complaint.

186.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 186 of the Complaint.

187.     Defendants deny for lack of knowledge and lack of specificity the allegations set

forth in Paragraph 187 of the Complaint.

188.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 188 of the Complaint.

189.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 189 of the Complaint.

190.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 190 of the Complaint.

191.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 191 of the Complaint.

192.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 192 of the Complaint.

193.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 193 of the Complaint.

194.     Defendants deny for lack of knowledge and lack of specificity the allegations set forth in Paragraph 194 of the Complaint.

195.     Defendants deny the allegations set forth in paragraph 195 of the Complaint.

196.     Defendants deny the allegations set forth in paragraph 196 of the Complaint.

197.     The Plaintiff "reserved" the allegations in paragraph 197 of the Complaint. Defendants reserve the right to respond to paragraph 197 of the Complaint and otherwise deny paragraph 197 of the Complaint.

## COUNT TEN
### Fraud in the Inducement
### (Acquisition Agreement)

198.     In response to paragraph 198 of the Complaint, Defendants restate each admission

and denial set forth above as if fully restated herein.

199.     Defendants deny the allegations set forth in paragraph 199 of the Complaint.

200.     Defendants deny the allegations set forth in paragraph 200 of the Complaint.

201.     Defendants deny the allegations set forth in paragraph 201 of the Complaint.

202.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 202 of the Complaint.

203.     Defendants deny the allegations set forth in paragraph 203 of the Complaint.

204.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 204 of the Complaint.

205.     For lack of knowledge, Defendants deny the allegations set forth in paragraph 205 of the Complaint.

206.     Defendants deny the allegations set forth in paragraph 206 of the Complaint.

### COUNT ELEVEN
### Declaratory Judgment
### (Seller Note)

207.     Defendants admit that Plaintiffs executed an delivered a Non-Negotiable Contingent Promissory Note to Seller. Defendants deny each and every allegation set forth in paragraph 207 of the Complaint which is not specifically admitted herein.

208.     Defendants admit that the Seller Note speaks for itself and that subject to its terms, Plaintiffs are to pay quarterly interest-only payments to Seller under the Seller Note, with the principal to be paid on the Maturity Date as defined in Section 2 of the Seller Note. Defendants deny each and every allegation set forth in paragraph 208 of the Complaint which is not specifically admitted herein.

209.     Defendants admit that Plaintiffs have failed to promptly make the quarterly

interest payments due under the Seller Note and that the Default Rate of interest has been triggered as set forth in the Seller Note.  Defendants deny each and every allegation set forth in paragraph 209 of the Complaint which is not specifically admitted herein.

210.    Defendants deny the allegations set forth in paragraph 210 of the Complaint.

211.    Defendants deny the allegations set forth in paragraph 211 of the Complaint.

212.    Defendants deny the allegations set forth in paragraph 212 of the Complaint.

213.    Defendants deny the allegations set forth in paragraph 213 of the Complaint.

214.    Defendants deny the allegations set forth in paragraph 214 of the Complaint.

215.    Defendants admit that any and all information which Defendants were obligated to disclose to Purchaser regarding Piedmont was promptly disclosed by the Seller Group. Defendants deny each and every allegation set forth in paragraph 215 of the Complaint which is not specifically admitted herein.

216.    The Plaintiff "reserved" the allegations in paragraph 216 of the Complaint. Defendants reserve the right to respond to paragraph 216 of the Complaint and otherwise deny paragraph 216 of the Complaint.

217.    The Plaintiff "reserved" the allegations in paragraph 217 of the Complaint. Defendants reserve the right to respond to paragraph 217 of the Complaint and otherwise deny paragraph 217 of the Complaint.

218.    Defendants deny the allegations set forth in paragraph 218 of the Complaint.

219.    Defendants deny the allegations set forth in paragraph 219 of the Complaint.

220.    The Plaintiff "reserved" the allegations in paragraph 220 of the Complaint. Defendants reserve the right to respond to paragraph 220 of the Complaint and otherwise deny paragraph 220 of the Complaint.

221.    The Plaintiff "reserved" the allegations in paragraph 221 of the Complaint. Defendants reserve the right to respond to paragraph 221 of the Complaint and otherwise deny paragraph 221 of the Complaint.

222.    The Plaintiff "reserved" the allegations in paragraph 222 of the Complaint. Defendants reserve the right to respond to paragraph 222 of the Complaint and otherwise deny paragraph 222 of the Complaint.

223.    For lack of knowledge, Defendants deny the allegations set forth in paragraph 223 of the Complaint.

224.    Defendants deny the allegations set forth in paragraph 224 of the Complaint.

225.    Defendants deny the allegations set forth in paragraph 225 of the Complaint.

226.    The Plaintiff "reserved" the allegations in paragraph 226 of the Complaint. Defendants reserve the right to respond to paragraph 226 of the Complaint and otherwise deny paragraph 226 of the Complaint.

227.    The Plaintiff "reserved" the allegations in paragraph 227 of the Complaint. Defendants reserve the right to respond to paragraph 227 of the Complaint and otherwise deny paragraph 227 of the Complaint.

228.    Defendants admit the Seller Note is in default due to the Plaintiffs breach of the terms of the Seller Note.

229.    The Plaintiff "reserved" the allegations in paragraph 229 of the Complaint. Defendants reserve the right to respond to paragraph 229 of the Complaint and otherwise deny paragraph 229 of the Complaint.

230.    Defendants admit the allegations set forth in paragraph 230 of the Complaint.

231.    The Plaintiff "reserved" the allegations in paragraph 231 of the Complaint.

Defendants reserve the right to respond to paragraph 231 of the Complaint and otherwise deny paragraph 231 of the Complaint.

232.    The Plaintiff "reserved" the allegations in paragraph 232 of the Complaint. Defendants reserve the right to respond to paragraph 232 of the Complaint and otherwise deny paragraph 232 of the Complaint.

233.    Defendants admit the allegations set forth in paragraph 230 of the Complaint.

234.    The Plaintiff "reserved" the allegations in paragraph 234 of the Complaint. Defendants reserve the right to respond to paragraph 234 of the Complaint and otherwise deny paragraph 234 of the Complaint.

## COUNT TWELVE
### Declaratory Judgment; Specific Performance
### (Escrow Agreement)

235.    In response to paragraph 235 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

236.    Defendants admit that Purchaser, Seller, and Hyde Park Title Agency LLC executed an Escrow Agreement, dated August 2, 2018, as part of the closing.

237.    Defendants denies the allegations set forth in paragraph 237 as written.

238.    Defendants admit the allegations set forth in paragraph 238 of the Complaint.

239.    Defendants deny the allegations set forth in paragraph 239 of the Complaint.

240.    Defendants admit the allegations set forth in paragraph 240 of the Complaint.

241.    Defendants admit the allegations set forth in paragraph 241 of the Complaint.

242.    Defendants deny the allegations set forth in paragraph 242 of the Complaint.

243.    Defendants deny the allegations set forth in paragraph 243 of the Complaint.

## COUNT THIRTEEN
### Breach of Duty of Fiduciary Duty

**(Duty of Care)**

244. In response to paragraph 244 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

245. Defendants deny the allegations set forth in paragraph 245 of the Complaint as any ability to act as an agent of the Company was expressly restricted by the Operating Agreement.

246. Defendants deny the allegations set forth in paragraph 246 of the Complaint.

247. Any duty of care that Rostowsky and Schweitzer may have owed to the Company was limited or otherwise eliminated by each Operating Agreement of the Company, O.R.C. § 1705.281 and other applicable law. Defendants deny each and every allegation set forth in paragraph 247 of the Complaint which is not specifically admitted herein.

248. Defendants deny the allegations set forth in paragraph 248 of the Complaint.

249. Defendants deny the allegations set forth in paragraph 249 of the Complaint.

250. Defendants deny the allegations set forth in paragraph 250 of the Complaint.

## COUNT FOURTEEN
### Breach of Duty of Fiduciary Duty
**(Duty of Loyalty)**

251. In response to paragraph 251 of the Complaint, Defendants restate each admission and denial set forth above as if fully restated herein.

252. Defendants deny the allegations set forth in paragraph 252 of the Complaint as any ability to act as an agent of the Company was expressly restricted by the Operating Agreement.

253. Defendants deny the allegations set forth in paragraph 253 of the Complaint.

254. Any duty of loyalty that Rostowsky and Schweitzer may have owed to the

Company was limited or otherwise eliminated by each Operating Agreement of the Company, O.R.C. § 1705.281 and other applicable law. Defendants deny each and every allegation set forth in paragraph 254 of the Complaint which is not specifically admitted herein.

255. Defendants deny the allegations set forth in paragraph 255 of the Complaint.

256. Defendants deny the allegations set forth in paragraph 256 of the Complaint.

257. Defendants deny the allegations set forth in paragraph 257 of the Complaint.

### FIRST DEFENSE

258. Plaintiff's recovery is barred by Plaintiff's breach of contract.

### SECOND DEFENSE

259. The Complaint fails to state a claim upon which relief can be granted.

### THIRD DEFENSE

260. Plaintiffs' right of recovery, if any, is barred by the applicable statute of limitations.

### FOURTH DEFENSE

261. Plaintiffs' right of recovery, if any, is barred by the doctrine of unclean hands.

### FIFTH DEFENSE

262. Plaintiffs' are barred from recovery due to the affirmative defenses of assumption of risk, contributory negligence, duress, estoppel, laches, res judicata, fraud, illegality, injury by fellow servant, license, payment, release, waiver, and setoff.

### SIXTH DEFENSE

263. Plaintiffs' right of recovery, if any, which the Defendants continue to deny, is barred by the doctrine of privilege.

### SEVENTH DEFENSE

264. Plaintiffs' right of recovery, if any, which the Defendants continue to deny, is barred by the terms of the Operating Agreement and the Restated Operating Agreement for the Company.

## EIGHTH DEFENSE

265. Plaintiffs' right of recovery, if any, is barred by the failure of Company to indemnify and hold harmless Schweitzer and Rostowsky from any and all claims arising from or relating to their operation of the Company prior to Closing as required by the Operating Agreement and Restated Operating Agreement for S&S.

## NINTH DEFENSE

266. Plaintiffs' right of recovery, if any, is barred by the failure of Company to indemnify and hold harmless Schweitzer and Rostowsky from any and all claims arising from or relating to their operation of the Company prior to Closing as required by ORC §1705.32(H).

## TENTH DEFENSE

267. Plaintiffs' right of recovery, if any, is barred by the Business Judgement Rule.

## ELEVENTH DEFENSE

268. Plaintiffs' right of recovery, if any, is barred by the fact that, to the extent any of the alleged actions, decisions or determinations were made by Rostowsky and/ or Schweitzer, Rostowsky and/or Schweitzer reasonably relied upon information, opinions, reports, or statements, including, but not limited to, financial statements and other financial data, that were prepared or presented by one or more members, managers, officers, or employees of the Company who Rostowsky and/ or Schweitzer reasonably believe are reliable and competent in the matters prepared or presented.

## THIRTEENTH DEFENSE

269.     Plaintiffs' right of recovery, if any, is barred by the fact that, to the extent any of the alleged actions, decisions or determinations were made by Rostowsky and/ or Schweitzer, Rostowsky and/or Schweitzer reasonably relied upon information, opinions, reports, or statements, including, but not limited to, financial statements and other financial data, that were prepared or presented by counsel, public accountants, or other persons as to matters that Rostowsky and/ or Schweitzer reasonably believes are within the person's professional or expert competence.

## FOURTEENTH DEFENSE

270.     Plaintiffs' right of recovery, if any, is barred by the fact that, any and all damages allegedly suffered by Plaintiffs were proximately caused by the negligence, gross negligence and/or intentional acts of Plaintiffs and/ or Plaintiff's managers, officers and/or current employees.

## FIFTEENTH DEFENSE

271.     Plaintiffs' right of recovery, if any, is barred by the fact that, any and all damages allegedly suffered by Plaintiffs were proximately caused by the negligence, gross negligence and/or intentional acts of a third party or third parties.

## SIXTEENTH DEFENSE

272.     Plaintiffs' right of recovery, if any, is barred by the fact that, Plaintiff's failed to mitigate any and all damages allegedly suffered by Plaintiffs.

## SEVENTEENTH DEFENSE

273.     Plaintiffs' claim for fraud is barred by the failure to plead with particularity.

## EIGHTEENTH DEFENSE

274.     Plaintiffs' claims for declaratory judgment are barred and should be dismissed as said claims lack any useful purpose.

## NINETEENTH DEFENSE

26

275.    Plaintiffs' claim for declaratory judgment as to the Escrow Agreement is barred by Plaintiffs' breach of the duty of good faith and fair dealing as defined by Ohio law.

**TWENTIETH DEFENSE**

276.    Plaintiffs' claim for declaratory judgment as to the Seller Note is barred by Plaintiffs' breach of the duty of good faith and fair dealing as defined by Illinois law.

**TWENTY FIRST DEFENSE**

277.    Plaintiffs' claim for declaratory judgment as to the Seller Note is barred by: (i) S&S having secured an amendment or modification to the existing contract with Piedmont; and (ii) Plaintiffs' breach of the Seller Note caused by Plaintiffs' failure to pay Defendants interest totaling $312,951.39 as of January 16, 2020, plus a per diem of $937.50 through March 15, 2020 and a per diem thereafter of $719.18, until the prime rate fluctuates.

**TWENTY SECOND DEFENSE**

278.    The Defendants hereby gives notice of their intention to rely upon such additional affirmative defenses that may become apparent during discovery of this action and reserve the right to amend this Answer to assert any and all such affirmative defenses.

**COUNTERCLAIM AND THIRD PARTY COMPLAINT**

Now come Defendants-Counterclaim Plaintiffs S&S Holdco, Inc. ("Holdco"), Richard D. Rostowsky ("Rostowsky") and Gail L. Schweitzer ("Schweitzer")(collectively "Counterclaim Plaintiffs" and "Third Party Plaintiffs"),  and for their counterclaim against Plaintiff-Counterclaim Defendants S&S HC Holdings, LLC ("HC Holdings") and S&S Healthcare Strategies, Ltd. ("S&S" or "Company") (jointly "Counterclaim Defendants"), and Third Party Defendants Steven P. McGrath ("McGrath"),  Howard Buff ("Buff"), John Walker ("Walker")  and Vincent Esposito ("Esposito") (collectively "Third Party Defendants") hereby state as follows:

27

## INTRODUCTION

1.      The counterclaims present claims for declaratory judgment, breach of contract and fraud in the inducement against the Counterclaim Defendants.

2.      The third party claims are for: fraud in the inducement by Buff individually as well as on behalf of HC Holdings; breach of fiduciary duty by Buff and McGrath; and contribution and indemnification from all of the Third Party Defendants.

3.      Holdco as seller, and HC Holdings as Purchaser, entered into a Membership Interest Acquisition Agreement dated August 2, 2018 (the "Purchase Agreement"[1]) for the sale and purchase of the membership interests of S&S, an Ohio limited liability company.

4.      Attached to and/or otherwise incorporated into the Purchase Agreement are several additional agreements including, but not limited to, the Escrow Agreement dated August 2, 2018, between Holdco and HC Holdings[2] (the "Escrow Agreement").  The Purchase Agreement also incorporated and required the Closing deliverable of the Assignment and Assumption Agreement (Litigation Claim and Proceeds) dated August 2018 (the "Litigation Assignment").

5.      The Purchase Agreement is governed by Delaware law, while the Escrow Agreement and Litigation Assignment are governed by Ohio law.

6.      The "Closing" of the transactions contemplated by the Purchase Agreement occurred on August 2, 2018 with an effective date of 11:59 pm, August 1, 2018.

---

[1] Some of the terms of the Purchase Agreement, the attachments thereto, the other Transaction Documents, Operating Agreements, correspondence and certain facts and details associated with the allegations raised in this Counterclaim and Third Party Complaint are arguably subject to confidentiality agreements between the Parties and will be filed with the Court subject to an appropriate protective order.

[2] The Escrow Agreement also identifies Hyde Park Title Agency LLC, an Ohio limited liability company as "Escrow Agent."  Hyde Park Title Agency, LLC is not a party to this litigation.

7.     HC Holdings has failed or refused to perform certain obligations under the Purchase Agreement and those Agreements attached to and/or otherwise incorporated into the Purchase Agreement based on its incorrect interpretation of (a) Internal Revenue Code requirements with respect to 1099 reporting and penalties, and (b) Section 111 of the Medicare, Medicaid, and SCHIP Extension Act (MMSEA) of 2007. HC Holding's failure or refusal to perform has proximately caused Counterclaim Plaintiffs to incur extensive damages.

8.     HC Holdings has raised various claims against the Counterclaim Plaintiffs in this litigation (the "Claims by HC Holdings").

9.     Pursuant to the past and current Operating Agreements for S&S: i) S&S is obligated to indemnify and hold harmless Rostowsky and Schweitzer from all claims raised by S&S and HC Holding; and ii) the claims against Rostowsky and Schweitzer are barred.

10.    Buff individually and on behalf of S&S has breached the Advisory Agreement.

11.    The Counterclaim Plaintiffs deny the Claims by HC Holdings.  To the extent HC Holdings has suffered any Losses or damage, it has been caused by the negligence, gross negligence, intentional acts and/ or failure to act in good faith of the Third Party Defendants.

12.    The Third Party Defendants are liable to the Third Party Plaintiffs for contribution and indemnification.

## PARTIES, JURISDICTION, AND VENUE

13.    Holdco is an Ohio corporation having an office and principal place of business located at 6965 Rock Springs Drive, Liberty Township, Ohio 45011.

14.    HC Holdings is a Delaware limited liability company, with its principal place of business located at 3414 Peachtree Road, Suite 1600, Atlanta, Georgia 30326.

15.     S&S is a third party administrator, which has provided a sophisticated line of third party administrative services primarily in the healthcare field and has its principal place of business in Hamilton County, Ohio.

16.     McGrath is an individual, who upon information and belief resides at 3953 Land O lakes Drive NE, Atlanta Georgia, 30342.

17.     Buff is an individual, who upon information and belief resides at 103 Wellwood Avenue, Saint Johns, Florida 32259.

18.     Walker is an individual who upon information and belief resides at 40 Astra Way, St. Johns, Florida 32259.

19.     Esposito is an individual who upon information and belief resides at 167 Mac Gregor Drive, Stamford, Connecticut 06902.

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the complaint asserts a claim that arises under federal law in that a substantial question is in dispute with respect to the interpretation and application of (a) Internal Revenue Code requirements with respect to 1099 reporting and penalties, and (b) Section 111 of the **Medicare**, **Medicaid, and SCHIP Extension Act** (**MMSEA**) of **2007.  All other state-law claims which do not turn on the federal questions are within the Court's supplemental jurisdiction under 28 USC 1367(a) because they are form part of the same case or controversy as the claims that are within the court's federal-question original jurisdiction**.

21.     This Court has personal jurisdiction over Third Party Defendants, as set forth in Ohio Rev. Code Ann. § 2307.382(1) because the claims against them in this case arise from the business they have transacted in this county and state. In the alternative, Third Party Defendants are subject to the jurisdiction and venue of this Court under Ohio Rev. Code Ann. §§

30

2307.382(3) and 2307.382(4) because the claims against them in this case arise from tortious injuries by acts and omissions committed within and outside this county and state involving his business with and economic interest in the Company.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 1391(c)(2), because a substantial part of the events and omissions giving rise to the claims occurred in this judicial district and the Counterclaim Defendants and Third Party Defendants may be sued in any judicial district in which it is subject to personal jurisdiction; and Counterclaim Defendants have contractually agreed to the exclusive venue of the state and federal courts located in Hamilton County, Ohio; and, to the extent necessary, irrevocably waived any defense of lack of venue or inconvenient forum.

## ALLEGATIONS COMMON TO ALL CLAIMS

23.     Prior to August 2018, S&S was owned by Schweitzer and Rostowsky.

24.     Over 30 years of operation, Schweitzer and Rostowsky had built the Company into a thriving successful business.

25.     At all times during their ownership of S&S, Schweitzer and Rostowsky served as officers and/ or member managers of S&S.

### S&S Operating Agreement Indemnification

26.     Section 6.5 of the Operating Agreement for S&S that was in effect up until the date of Closing (the "S&S Operating Agreement") provides:

> 6.5. Indemnification - The Company shall indemnify its Members, Managers, officers, employees and agents for all liabilities incurred by such Member, Managers or agent in the ordinary course of the business of the Company or for the preservation of its business or property, to the fullest extent provided or allowed by the Act or otherwise by the laws of Ohio.

27.     ORC § 1705.32(A) and (B) provide in part:

31

**(A)** A limited liability company may indemnify or agree to indemnify any person who was or is a party, or who is threatened to be made a party, to any threatened, pending, or completed civil, criminal, administrative, or investigative action, suit, or proceeding, **other than an action by or in the right of the company**, because he is or was a manager, member, partner, officer, employee, or agent of the company…. The company may indemnify or agree to indemnify a person in that position against expenses, including attorney's fees, judgments, fines, and amounts paid in settlement that actually and reasonably were incurred by him in connection with the action, suit, or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the company and, in connection with any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.…

**(B)** A limited liability company may indemnify or agree to indemnify any person who was or is a party or who is threatened to be made a party to any threatened, pending, or completed action or suit **by or in the right of the company** to procure a judgment in its favor, because he is or was a manager, officer, employee, or agent of the company or is…. The company may indemnify or agree to indemnify a person in that position against expenses, including attorney's fees, that were actually and reasonably incurred by him in connection with the defense or settlement of the action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the company, except that an indemnification shall not be made in respect of any claim, issue, or matter as to which the person is adjudged to be liable for negligence or misconduct in the performance of his duty to the company unless and only to the extent that the court of common pleas or the court in which the action or suit was brought determines, upon application, that, despite the adjudication of liability but in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnification for expenses that the court considers proper.

(emphasis added).

28.     At all times while serving as an officer and/ or member manager of S&S, Rostowsky and Schweitzer acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the company, and did not act with negligence or misconduct in the performance of their duty to S&S, nor have they been so adjudged.

29.     In anticipation of the sale of S&S, Gail L. Schweitzer and Richard D. Rostowsky transferred ownership of 100% of the membership interests of S&S to Holdco, prior to the Closing. Gail L. Schweitzer, Richard D. Rostowsky and Holdco are defined by the Purchase Agreement as the "Seller Group."

**<u>Company Operation Commitments</u>**

30.     Prior to the parties entering into the Purchase Agreement, Buff, individually and acting on behalf of HC Holdings,  made a series of verbal commitments regarding post-Closing operation of the Company to Rostowsky and Schweitzer (the "Company Operation Commitments') which: i) Buff acknowledged were necessary for the successful operation of the Company post-Closing;  and  ii) necessary in order for Rostowsky and Schweitzer to sell their ownership of the Company (i.e. enter into the Purchase Agreement).

31.     The Company Operation Commitments included the following:

i)      There would be no major staff changes, and supplementation of the current management team where applicable;

ii)     Buff as Manager would not take a salary for at least two years;

iii)    In part to avoid employee attrition and maintain goodwill and continuity S&S would not be relocating, nor would there be any type of name change;

iv)    John Walker would be the Chief Medical Officer (CMO) and a separate Chief Operating Officer (COO) would be hired, who would reside locally;

v)     Development of the path for ESOP ownership for employees;

vi)    Focusing on and extensive financial investment in the IT department as it relates to appropriate staffing resources and needs; and

vii)   Continuation and completion of major projects currently underway, including but not limited to the IT projects which would automate the process of bringing on large amounts of business concurrently, faster and more efficiently for the benefit of existing employee, while minimizing the system learning curve for new staff.

32.     Each of the Company Operation Commitments was expressly made for the purpose of inducing Rostowsky and Schweitzer to agree to the sale of their ownership interest of the Company and was implicitly and / or expressly incorporated into Sections 5.2, 5.3 and 5.5 of the Purchase Agreement.

33.     Pursuant to the terms of the Purchase Agreement, HC Holdings acquired 70% of the membership interests of S&S.  Holdco's remaining 30% membership interest in S&S was contributed to HC Holdings in exchange for a 30% membership interest in HC Holdings.

34.     Pursuant to Section 7.5 of the Purchase Agreement and the terms of the Escrow Agreement, a $2,000,000 portion of the purchase price (the "Indemnification Escrow Amount") was placed in escrow as partial security of the Seller Group's indemnity obligations in the Purchase Agreement.

35.     Pursuant to Section 7.5 of the Purchase Agreement and the terms of the Escrow Agreement, the Indemnification Escrow Amount was to be deposited into an escrow account until the end of the fifteenth (15th) month immediately following the closing of the transactions contemplated by the Purchase Agreement (the "Escrow Period", i.e. from Closing until November 30, 2019).

36.     Pursuant to Section 7.5 of the Purchase Agreement, within two (2) business days of the end of the Escrow Period, the unapplied balance of the Indemnification Escrow Amount, less that portion of the unapplied balance sufficient to satisfy any indemnity claims delivered to Holdco during the Escrow Period and unresolved at the end of the Escrow Period, should have been released to Holdco, together with any earnings on the Indemnification Escrow Amount earned during the Escrow Period, and the remaining portion of such balance, if any, is to be released to Holdco within five (5) business days of the final resolution of any such indemnity claim.

37.     Pursuant to the implied covenant of good faith and fair dealing under Delaware law, implicit within Section 7.5 of the Purchase Agreement is the requirement that any indemnity claim presented by HC Holdings must be presented in good faith.

38.     Sections 4, 5 and 6 of the Escrow Agreement also provide in part that following the Escrow period the Indemnification Escrow Amount (including any interest earned thereon), minus

34

any pending claims or any unresolved claims by HC Holdings against such Indemnification Escrow Amount with respect to which payment has not yet been made, shall be paid to Holdco.

39.     Pursuant to Ohio law's implied covenant of good faith and fair dealing, implicit within the Escrow Agreement is the requirement that any indemnity claim presented by HC Holdings must be presented in good faith.

40.     As part of the Purchase Agreement, S&S and Holdco entered into an Advisory Agreement, whereby Rostowsky and Schweitzer would jointly serve as the Advisor to S&S.

41.     Recognizing that the goodwill and success of S&S is closely tied to the reputation that Schweitzer and Rostowsky had built over 30 years in the industry, S&S expressly agreed that for a period of 5 years "…the Company, for itself and on behalf of its subsidiaries and affiliates, agrees that none of them nor any of their officers, employees, agents or representatives will make any statement or otherwise take any action that would or might reasonably be interpreted as disparaging or critical of the Advisor."

42.     The Closing of the transactions contemplated by the Purchase Agreement occurred on August 2, 2018 with an effective date August 1, 2018 at 11:59 pm.

43.     On August 2, 2018, the Members of HC Holdings, including Holdco, entered into the Amended and Restated Limited Liability Company Agreement of S&S HC Holdings, LLC (the "HC Operating Agreement").

44.     Pursuant to the terms of the HC Operating Agreement, including but not limited to the definition of "Level", the definition of "Investor Representative" and  Section 4.2(iii), and McGrath's position as Manager of  Level Capital Partners, LLC (the Manager of Level S&S Holdco, LLC), effective August 2, 2018, McGrath became a Board member and Investor Representative of HC Holdings.

45.     Effective August 2, 2018 Buff was also formally appointed Chief Operating Officer of HC Holdings.

46.     Pursuant to Section 4.11 of the HC Operating Agreement, McGrath as the Investor Representative affiliated with Level Capital Partners, LLC and Buff as Chief Financial Officer (of HC Holdings and S&S) owed and /or owe a fiduciary duty to Holdco as a Unitholder as described in Section 4.7(c) of the HC Operating Agreement.

47.     Pursuant to Section 4.7(c) of the HC Operating Agreement, McGrath and Buff owe a duty of loyalty to Holdco and (subject to Sections 6.1 and 6.2 of the HC Operating Agreement) owe a duty of care to Holdco.

48.     Pursuant to Section 6.1 of the HC Operating Agreement the duty of care is limited to gross negligence, intentional misconduct or breach of the HC Holding Operating Agreement, or breach of any duty owed to Holdco.

49.     Pursuant to Section 6.2 of the HC Operating Agreement McGrath and Buff are not entitled to any indemnification from HC Holdings to the extent of fraud, intentional misconduct or breach of the HC Operating Agreement.  Buff is also not entitled to indemnification for gross negligence.

### S&S Restated Operating Agreement Limitation of Liability and Indemnification

50.     Subsequent to the Closing and in accordance with S&S being a constituent and surviving entity of the consolidation, HC Holdings as the sole member, entered into an Amended and Restated Limited Liability Company Agreement for S&S (the "Restated Operating Agreement").

51.     Sections 14 and 15 of the Restated Operating Agreement Provide:

14. **Limitation on Liability**.
(a) Neither the Member nor any of the Managers or Officers are liable for the

acts, debts, or obligations of the Company.

(b) No Manager or Officer shall be liable to the Company or the Member for monetary damages except to the extent that (i) it is proved that the Manager or Officer actually received an improper benefit or profit in money, property or services or (ii) a judgment or other final adjudication adverse to the Manager or Officer is entered in a proceeding based on a finding in the proceeding that the Manager or Officer's action, or failure to act, was the result of active and deliberate dishonesty on the part of the Manager or Officer and was material to the course of action adjudicated in the proceeding.

15. **Indemnification**. The monetary liability of the Member and Managers for breach of any duty is limited to the fullest extent permitted by the LLC Law. The Company shall indemnify and hold harmless the Member and each Manager from and against any and all losses, expenses, claims, and demands sustained by reason of any acts or omissions or alleged acts or omissions of the Member or Managers, including judgments, settlements, penalties, fines, or expenses incurred in a proceeding to which the Member or any Manager is a party or threatened to be made a party because the person or entity is or was a member or manager to the fullest extent permitted by law or contract and not subject to any restriction by this Agreement.

52.     Pursuant to ORC § 1705.32(H), Rostowsky and Schweitzer are entitled to all of the protections of Sections 14 and 15 of the Restated Operating Agreement as if they had been a Member and/or Officer of S&S after August 2, 2018.

53.     The Restated Operating Agreement identified Buff as the sole Manager and the Chief Executive Officer of S&S.

54.     The Restated Operating Agreement also identified Walker as the Chief Clinical Strategy and Operations Officer and Esposito as the Chief Strategy and Business Development Officer.

## Willful Misconduct, Gross Negligence, Breach of Agreements and Breach of Duties by Buff, McGrath , Walker and Esposito

55.     Upon information and Belief, beginning shortly after the Closing, Buff, individually, as the Chief Executive Officer of HC Holdings and S&S, and in conjunction with McGrath, Walker and Esposito, engaged in a series intentional misconduct, grossly negligent acts

and breaches of the applicable Purchase Agreement, HC Operating Agreement, duty of good faith and fair dealing and duty of loyalty, including but not limited to:

a) Buff began making a series of derogatory comments to customers, and others in the industry and that the Sellers were incompetent and that their staff were "Podunk hicks" who did not know what they were doing;

b) Buff regularly communicated to employees that Rostowsky and Schweitzer were incompetent and had mismanaged the business;

c) Contrary to the commitments made in the Purchase Agreement and the statements made to induce Rostowsky and Schweitzer to enter into the Purchase Agreement, Buff, Walker and Esposito, with the consent of McGrath began terminating long term employees, necessary for the successful operation of the Company and replaced them with staff that did not have the required industry knowledge;

d) Buff, Walker and Esposito with the consent of McGrath changed S&S's successful business model to outsource a number of S&S's revenue producing services;

e) Despite the existence of the Advisory Agreement and the availability of the experience of Rostowsky and Schweitzer to aid the successful operation of the Company, Buff, Walker and Esposito with the consent of McGrath instructed S&S employees that they were not permitted to communicate with Rostowsky and Schweitzer;

f) With the loss of key employees, and the gross negligence and misconduct of Buff, Walker and Esposito with respect to the nuances of the operation of such a business and administrative mismanagement, a number of long-term business relationships of the Company were lost;

g) Buff, Walker and/ or Esposito elected to provide run out services for Riverstone and mismanaged the Riverstone relationship;

h) To the extent that any Losses were experienced by S&S with respect to the Riverstone claims, the willful misconduct and gross negligence of Walker and Esposito with the consent and intentional disregard of McGrath unnecessarily created such Losses;

i) To the extent that any Losses were experienced by S&S with respect to the Paradigm, Path, Material Contracts, 1099 Reporting, Section 111 Reporting, Stop Loss Reporting, and Georgia Customer claims, the willful misconduct and gross negligence of Walker and Esposito with the consent and intentional disregard of McGrath unnecessarily created such Losses;

j) To the extent that any Losses were experienced by S&S with respect to the 1099 claims, Buff, Walker and Esposito with the consent of McGrath unnecessarily created such Losses;

56. On several occasions, Schweitzer contacted McGrath and/or Buff in writing to advise them of the breaches of the various agreements and the detrimental mismanagement of the Company. McGrath and Buff, in breach of their respective fiduciary duties and obligations willfully disregarded the changes that needed to be made to operation of the Company.

**False Claims for Indemnification**

57. In a correspondence dated October 28, 2019[3], HC Holdings, by and through counsel, alleged seven false claims for indemnity, none of which were presented in good faith as defined by either Delaware law or Ohio law.

---

[3] Some of the details presented in the October 28, 2019 correspondence are arguably subject to confidentiality agreements between the Parties and will be filed with the Court subject to an appropriate protective order.

58.     HC Holdings' false claims for indemnity include the allegation that Holdco by and through Schweitzer and Rostowsky had violated and caused significant liabilities arising from the 1099 reporting requirements imposed by the Internal Revenue Code.

59.     Among other deficiencies, HC Holdings incorrectly applies and interprets the 1099 reporting requirements and liabilities imposed by the Internal Revenue Code.

60.     HC Holdings' false claims for indemnity also include the allegation that Plaintiff by and through Schweitzer and Rostowsky had violated the reporting requirements imposed by Section 111 of the MMSEA.

61.     Among other deficiencies, HC Holdings incorrectly applies and interprets Section 111 of the MMSEA with respect to backhouse BPO relationships.

62.     HC Holdings presented the false indemnity claims for the purpose of wrongfully preventing the payment of the Indemnification Escrow Amount to Holdco.

**Three Rivers Law Suit Assignment, Cooperation, and Control**

63.     Pursuant to Section 2.5(E) of the Purchase Agreement, the Purchase Agreement expressly contemplated that, at Closing, Holdco was to be delivered the Litigation Assignment, which would provide an assignment of the rights, liabilities and obligations, including any settlement and/or judgment, in connection with that certain pending case in the United States District Court for Southern District of Ohio, case no. 1:17-cv-00783, S&S Healthcare Strategies. Ltd. v. Three Rivers Provider Network, Inc. (the "Three Rivers Law Suit" or "Three Rivers Litigation").

64.     The Litigation Assignment is included in the definition of Transaction Documents as set forth in the Purchase Agreement.

65.    The Litigation Assignment transferred and assigned to Holdco all right title and interest in, to and under the rights, remedies, claims, actions and recoveries due or to become due from the Three Rivers Litigation.

66.    The Litigation Assignment also provided Holdco with the express right to control and direct the Three Rivers Litigation.

67.    Pursuant to Section 5.2 of the Purchase Agreement,  HC Holdings was obligated to execute and deliver (and cause its affiliates to execute and deliver) such additional documents, instruments, conveyances and assurances and take any such further action (and cause its affiliates to take such further action) reasonably required to: a) allow Holdco to adequately pursue the rights, remedies, claims, actions and recoveries due from the defendants in the Three Rivers Litigation; and b) prevent HC Holdings and  HC Holdings' affiliates from violating Holdco's right to control and direct the Three Rivers Litigation.

68.    HC Holdings has repeatedly failed to take any such further action (or failed to cause its affiliates to take any such further action) reasonably required to allow Holdco to adequately pursue the rights, remedies, claims, actions and recoveries due from the defendants in the Three Rivers Litigation.

69.     HC Holdings has repeatedly failed to take any such further action (or failed to cause its affiliates to take any such further action) reasonably required to prevent HC Holdings and its affiliates from violating Holdco's right to control and direct the Three Rivers Litigation.

70.    HC Holdings and HC Holdings' affiliates have repeatedly acted directly contrary to Holdco's direction, unnecessarily creating or incurring attorneys fees and expenses associated with the Three Rivers Litigation and compromising and increasing the fees and expense of Holdco's pursuit of recovery.

**Indemnification Provisions**

71.     Pursuant to Section 7.2(a) of the Purchase Agreement and subject to HC Holdings obligation to indemnify and hold harmless the Seller Group, the Seller Group agreed to indemnify and hold harmless HC Holdings, and those affiliated with HC Holdings from any and all Losses (as defined in the Purchase Agreement) arising out of any inaccuracy in or breach of the representations and warranties provided to HC Holdings.

72.     Section 7.4 of the Purchase Agreement prohibited HC Holdings' right to indemnification under Section 7.2(a) until the aggregate liability for all claims exceeds $272,000 (the "Deductible").  The Deductible does not apply if HC Holdings can prove fraud or intentional misrepresentation.

73.     Pursuant to Section 7.2(e) of the Purchase Agreement and subject to HC Holdings' obligation to indemnify and hold harmless the Seller Group, the Seller Group agreed to indemnify and hold harmless HC Holdings, and those affiliated with HC Holdings from any and all Losses (as defined in the Purchase Agreement) arising out of the Three Rivers Law Suit.  The Deductible is not applicable to the Three Rivers Law Suit.

74.     Pursuant to Section 7.3 of the Purchase Agreement, HC Holdings' obligation to indemnify, defend and hold harmless the Seller Group and their Representatives includes, but is not limited to, any and all "Losses" incurred or sustained by, or imposed upon the Seller Group or their Representatives based upon, arising out of, with respect to or by reason of: (a) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by HC Holdings pursuant to the Purchase Agreement or the other Transaction Documents (e.g. the Litigation Assignment and the Escrow Agreement); and (b) any (i) unpaid obligation of S&S or (ii) third-

party claims any of which are based upon, resulting from or arising out of the conduct of the business or the ownership of S&S after the Closing.

75.     There is no deductible or cap associated with HC Holdings' obligation to indemnify, defend and hold harmless the Seller Group.

76.     "Losses" are defined by the Purchase Agreement to include losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorneys fees and the cost of enforcing any right to indemnification.

### HC Holdings' false indemnity claims

77.     Two of HC Holdings' false indemnity claims turn upon its incorrect interpretation of federal law (i.e. the Internal Revenue Code and the MMSEA).

78.     Six of the indemnity claims raised by HC Holdings falsely allege that Holdco breached one or more of the representations and warranties set forth in the Purchase Agreement ("HC Holdings' Representation and Warranty Claims").

79.     Each of HC Holdings' Representation and Warranty Claims are barred by the fact that it fails to comply with one or more of the limitations and restrictions placed upon the various representations and warranties provided by Seller Group in the Purchase Agreement, including but not limited to: (a)  the representations and warranties are only correct and complete as of the Closing Date; (b) certain representations and warranties are limited to the actual knowledge of Schweitzer or Rostowsky; and/or (c) the representations and warranties must be read within the context of the entire Purchase Agreement.

80.     Each of HC Holdings' Representation and Warranty Claims are barred by the fact that there has been no inaccuracy in, or breach of, any of the representations and warranties provided to HC Holdings in the Purchase Agreement.

81.     Each of HC Holdings' Representation and Warranty Claims are barred because the alleged circumstances and Losses upon which HC Holdings bases each claim are the direct and proximate result of HC Holdings' negligence and the mismanagement of S&S post-Closing.

82.     Each of HC Holdings' Representation and Warranty Claims are barred because the alleged circumstances and Losses upon which HC Holdings bases each claim are the direct and proximate result of HC Holdings' unpaid obligations of S&S; or third party claims which are based upon, resulting from or arising out of the conduct of the business of S&S or the ownership of S&S after the Closing.

83.     Pursuant to Section 7.3 of the Purchase Agreement, HC Holdings is obligated to indemnify and hold harmless the Seller Group with respect to each of HC Holdings' Representation and Warranty Claims.

84.     Each of HC Holdings' Representation and Warranty Claims are barred by the failure of the claims, individually or in the aggregate, to exceed the Deductible.

85.     HC Holdings, in a bad faith effort to circumvent the Deductible, wrongfully, willfully and maliciously misrepresents that each of HC Holdings' Representation and Warranty Claims arises out of the fraud or intentional misrepresentation of the Seller Group.

86.     HC Holdings' remaining indemnity claim seeks indemnification for legal fees and expenses associated with the Three Rivers Litigation.

87.     HC Holdings' claim for indemnity relating to the Three Rivers Litigation is barred by HC Holdings' breach of its obligations with respect to the Three Rivers Litigation.

88.     Pursuant to Section 7.3 of the Purchase Agreement, HC Holdings is obligated to indemnify and hold harmless the Seller Group from all Losses as a result of HC Holdings' breach of the Purchase Agreement regarding the Three Rivers Litigation.

89.     All of HC Holdings' claims for indemnity are barred by HC Holdings' breach of its obligation to indemnify the Seller Group.

## COUNT ONE – DECLARATORY JUDGMENT

90.     Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

91.     Holdco and HC Holdings entered into several legally binding and enforceable agreements between the Parties including but not limited to the Purchase Agreement and the Escrow Agreement.

92.     Pursuant to Section 7.5 of the Purchase Agreement and the terms of the Escrow Agreement, on or before December 3, 2019, the unapplied balance of the Indemnification Escrow Amount, less that portion of the unapplied balance sufficient to satisfy any indemnity claims delivered to Holdco during the Escrow Period and unresolved at the end of the Escrow Period, was to be released to Holdco, together with any earnings on the Indemnification Escrow Amount earned during the Escrow Period, and the remaining portion of such balance, if any, is to be released to the Holdco within five (5) business days of the final resolution of any such indemnity claim.

93.     In a correspondence dated October 28, 2019, and solely for the purpose of unlawfully preventing the payment of the Indemnification Escrow Amount to Holdco, HC Holdings, by and through counsel, alleged seven false indemnity claims, none which were presented in good faith as defined by either Delaware law or Ohio law.

94.     HC Holdings' indemnity claims are barred by: (a) HC Holdings' misinterpretation and misapplication of federal law (i.e. the Internal Revenue Code and the MMSEA) (b) the failure of the claims to comply with one or more of the limitations and restrictions placed upon the various representations and warranties provided by Seller Group in the Purchase Agreement; (c) there has been no inaccuracy in, or breach of, any of the representations and warranties provided to HC Holdings in the Purchase Agreement;  (d) the alleged circumstances and Losses upon which HC Holdings bases each claim are the direct and proximate result of HC Holdings' negligence and the mismanagement of S&S post-Closing; (e) the alleged circumstances and Losses upon which HC Holdings bases each claim are the direct and proximate result of HC Holdings' unpaid obligations of S&S; or third party claims which are based upon, resulting from or arising out of the conduct of the business of S&S or the ownership of S&S after the Closing; (f) the failure of the claims, individually or in the aggregate, to exceed the Deductible; (g) HC Holdings' breach of HC Holdings' obligations with respect to the Three Rivers Litigation; and/or (h) HC Holdings' breach of its obligation to indemnify the Seller Group.

95.     Pursuant to the terms of the Purchase Agreement and the Escrow Agreement, Holdco is entitled to payment of the Indemnification Escrow Amount, together with any earnings on the Indemnification Escrow Amount earned during and after the Escrow Period.

96.     Pursuant to Section 7.3 of the Purchase Agreement, HC Holdings is obligated to indemnify the Seller Group for all Losses arising out of or relating to HC Holdings' breach of the Purchase Agreement and the Escrow Agreement, including but not limited to, the reasonable attorneys fees incurred by Seller Group with respect to this litigation.

97.     HC Holdings has materially breached both the Purchase Agreement and the Escrow Agreement by presenting false claims for indemnity and obstructing the payment of the

Indemnification Escrow Amount to Holdco in violation of the implicit terms of the Purchase Agreement and the Escrow Agreement created by the duty of good faith and fair dealing.

98.     Holdco has complied with all of its requirements set forth in the Purchase Agreement and the Escrow Agreement.

99.     An actual case or controversy exists because HC Holdings' false claims for indemnity and breach of the Purchase Agreement and Escrow Agreement have prevented payment of the Indemnification Escrow Amount to Holdco. A judgment by this Court regarding the parties' rights and obligations under those agreements, and regarding Holdco's rights and obligations under the Internal Revenue Code and MMSEA, would terminate the controversy giving rise to this action.

100.    Pursuant to 28 U.S.C. § 2201, Holdco is entitled to a declaratory judgment which states that:

a.  The Seller Group did not fail to comply with its 1099 reporting requirements under the Internal Revenue Code;

b.  The Seller Group did not fail to comply with Section 111 of the MMSEA;

c.  HC Holdings' claims for indemnity are barred pursuant to the terms of the Purchase Contract, the Escrow Agreement and as a matter of law;

d.  Pursuant to the terms of the Purchase Agreement and the Escrow Agreement, Holdco is entitled to immediate payment of the total Indemnification Escrow Amount, together with any earnings on the total Indemnification Escrow Amount earned during and after the Escrow Period;

e.  HC Holdings shall indemnify the Seller Group for all Losses arising out of or relating to HC Holdings' breach of the Purchase Agreement and the Escrow Agreement,

47

including but not limited to, the reasonable attorneys fees incurred by Seller Group arising out of or relating to this litigation.

## COUNT TWO – BREACH OF CONTRACT
### (Breach of the Purchase Agreement)

101.    Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

102.    Holdco and HC Holdings entered into the Purchase Agreement on or about August 2, 2018.

103.    In breach of Sections 5.2, 5.3 and 5.5 of the Purchase Agreement HC Holdings failed to comply with or otherwise perform the Company Operation Commitments.

104.    Pursuant to Section 7.5 of the Purchase Agreement, within two (2) business days of the end of the Escrow Period, the unapplied balance of the Indemnification Escrow Amount, less that portion of the unapplied balance sufficient to satisfy any indemnity claims delivered to Holdco during the Escrow Period and unresolved at the end of the Escrow Period, would be released to Holdco, together with any earnings on the Indemnification Escrow Amount earned during the Escrow Period, and the remaining portion of such balance, if any, is to be released to the Holdco within five (5) business days of the final resolution of any such indemnity claim.

105.    Pursuant to the implied covenant of good faith and fair dealing under Delaware law, implicit within Section 7.5 of the Purchase Agreement is the requirement that any indemnity claim presented by HC Holdings must be presented in good faith.

106.    In breach of Section 7.5 of the Purchase Agreement and the duty of good faith and fair dealing implicit in Section 7.5 of the Purchase Agreement, in a correspondence dated October 28, 2019, HC Holdings, by and through counsel, alleged seven false indemnity clams solely for

the purpose of wrongfully preventing the payment of the Indemnification Escrow Amount to Holdco.

107.    HC Holdings' claims for indemnity are barred pursuant to the terms of the Purchase Agreement and as a matter of law

108.    In accordance with the terms of the Purchase Agreement and the duty of good faith and fair dealing, Holdco is entitled to payment of the total Indemnification Escrow Amount together with any earnings on the Indemnification Escrow Amount earned during and after the Escrow Period.

109.    In breach of Section 5.2 of the Purchase Agreement, HC Holdings has repeatedly failed to take any such further action (or failed to cause its affiliates to take any such further action) reasonably required to allow Holdco to adequately pursue the rights, remedies, claims, actions and recoveries due from the defendants in the Three Rivers Litigation.

110.    In breach of Section 5.2 of the Purchase Agreement, HC Holdings has repeatedly failed to take any such further action (or failed to cause its affiliates to take any such further action) reasonably required to prevent HC Holdings and its affiliates from violating Holdco's right to control and direct the Three Rivers Litigation.

111.    In breach of Section 5.2 of the Purchase Agreement, HC Holdings and HC Holdings' affiliates have repeatedly acted directly contrary to Holdco's direction, unnecessarily creating or incurring attorneys fees and expenses associated with the Three Rivers Litigation and compromising and increasing the fees and expense of Holdco's pursuit of recovery, in an amount to be determined at trial.

112.    Pursuant to Section 7.3 of the Purchase Agreement, HC Holdings is obligated to indemnify the Seller Group for all Losses arising out of or relating to HC Holdings breach of the

49

Purchase Agreement and the Escrow Agreement, including but not limited to, the reasonable attorneys fees incurred by Seller Group with respect to this litigation.

113.     Holdco has complied with all of its requirements set forth in the Purchase Agreement.

114.     As a direct and proximate result of HC Holdings' material breach of the Purchase Agreement, Holdco has been damaged in an amount to be determined at trial, but no less than $7,000,000.00, plus all attorneys fees costs and expenses incurred by Holdco.

## COUNT THREE – BREACH OF CONTRACT
### (The Escrow Agreement)

115.     Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

116.     Holdco and HC Holdings entered into the Escrow Agreement on or about August 2, 2018.

117.     Sections 4, 5 and 6 of the Escrow Agreement provide in part that following the Escrow period the Indemnification Escrow Amount (including any interest earned thereon), minus any pending claims or any unresolved claims by HC Holdings against such Indemnification Escrow Amount with respect to which payment has not yet been made, shall be paid to Holdco.

118.     Pursuant to Ohio law's implied covenant of good faith and fair dealing, implicit within the Escrow Agreement is the requirement that any indemnity claim presented by HC Holdings must be presented in good faith.

119.     In breach of Sections 4, 5 and 6 of the  Escrow Agreement and the duty of good faith and fair dealing implicit in Sections 4, 5 and 6 of the Escrow Agreement, in a correspondence dated October 28, 2019, HC Holdings, by and through counsel, alleged seven false indemnity

clams solely for the purpose of wrongfully preventing the payment of the Indemnification Escrow Amount to Holdco.

120.    HC Holdings' claims for indemnity are barred pursuant to the terms of the Purchase Contract and as a matter of federal and state law.

121.    In accordance with the terms of the Escrow Agreement and the duty of good faith and fair dealing, Holdco is entitled to payment of the total Indemnification Escrow Amount together with any earnings on the Indemnification Escrow Amount earned during and after the Escrow Period.

122.    Pursuant to Section 7.3 of the Purchase Agreement, HC Holdings is obligated to indemnify the Seller Group for all Losses arising out of or relating to HC Holdings' breach of the Purchase Agreement and the Escrow Agreement, including but not limited to, the reasonable attorneys fees incurred by Seller Group with respect to this litigation.

123.    Holdco has complied with all of its requirements set forth in the Escrow Agreement.

124.    As a direct and proximate result of HC Holdings' material breach of the Escrow Agreement, Holdco has been damaged in an amount to be determined at trial, but no less than $2,000,000.00, plus all attorneys fees costs and expenses incurred by Holdco.

**COUNT FOUR – QUANTUM MERUIT**
**(in the alternative)**

As a further and separate cause of action, Counterclaim Plaintiffs state in the alternative to Counts One, Two and Three as follows:

125.    Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

126.    Holdco conferred a benefit to HC Holdings by selling or otherwise transferring 100% of the membership interest of S&S to HC Holdings.

127. Holdco sold or otherwise transferred S&S to HC Holdings in reliance upon the representations and promises made by HC Holdings that Holdco would be compensated in full for the sale/transfer, including but not limited to payment of the $2,000,000.00 held in escrow.

128. HC Holdings had knowledge of and received the benefit of the sale/transfer of S&S.

129. Despite its awareness of receiving such benefit, HC Holdings still fabricated or otherwise manufactured false indemnification claims to prevent Holdco from being paid the $2,000,000.00 held in escrow.

130. HC Holdings' retention of the benefit of 100% of the membership interest of S&S without Holdco receiving full payment, including but not limited the $2,000,000 held in escrow and all attorneys fees incurred in pursuit of said Indemnification Escrow Amount, would be inequitable and unjust.

## COUNT FIVE – PROMISSORY ESTOPPEL
### (in the alternative)

As a further and separate cause of action, Counterclaim Plaintiffs state in the alternative to Counts One, Two and Three as follows:

131. Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

132. HC Holdings made clear and unambiguous promises and representations to Holdco, both in the Purchase Agreement, the Escrow Agreement and otherwise, that Holdco would be compensated in full for the sale/transfer of 100% of the membership interest in S&S, including the $2,000,000.00 held in escrow. The $2,000,000.00 held in escrow would only be reduced by any legitimate claims that HC Holdings would have for indemnification pursuant to the terms of the Purchase Agreement.

133.    As a result of such representations set forth above and throughout this Complaint, Holdco sold or otherwise transferred 100% of the membership interest in S&S to HC Holdings.

134.    Holdco reasonably relied upon HC Holdings promises, representations, and authorizations in selling or otherwise transferring 100% of the membership interest in S&S to HC Holdings.

135.    HC Holdings should have reasonably expected, and in fact intended, that Holdco would rely upon HC Holdings' promises and representations in selling or otherwise transferring 100% of the membership interest in S&S to HC Holdings.

136.    Holdco was damaged by its reliance upon such promises and representation when HC Holdings presented false indemnification claims in order to prevent Holdco from receiving payment of the Indemnification Escrow Amount.

137.    Injustice can be avoided only by enforcement of the promises and representations made by HC Holdings to compensate Holdco in full for the sale/transfer of the membership interests in S&S.

## COUNT SIX – UNJUST ENRICHMENT
### (in the alternative)

As a further and separate cause of action, Counterclaim Plaintiffs state in the alternative to Counts One and Two as follows:

138.    Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

139.    Holdco conferred a benefit to HC Holdings by through the sale/transfer of 100% of the membership interest of S&S.

140.    Holdco made such sale/transfer in reliance upon the representations and promises made by HC Holdings that Holdco would be compensated in full for the sale/transfer of 100% of the membership interest of S&S.

141.    HC Holdings had knowledge of and received the benefit of the sale/transfer.

142.    HC Holdings was aware that Holdco had conferred this benefit on HC Holdings.

143.    Despite its awareness of receiving such benefit, HC Holdings made false indemnity claims in order to cause the $2,000,000.00 in Indemnification Escrow Amount, and all interest earned thereon during the Escrow Period, to be returned to HC Holdings instead of being paid to Holdco.

144.    HC Holdings' retention of the benefit of the sale/transfer without providing payment to Holdco in full, including the Indemnification Escrow Amount of $2,000,000.00 and all interest earned thereon during the Escrow Period would be inequitable and unjust.

## COUNT SEVEN – DECLARATORY JUDGMENT

### S&S Operating Agreement Indemnification

145.    Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

146.    As Members, member managers and officers of S&S until the date of Closing, Rostowsky, Schweitzer and S&S entered into a legally binding and enforceable agreement in the form of the S&S Operating Agreement.

147.    Section 6.5 of the S&S Operating Agreement provides:

6.5. Indemnification - The Company shall indemnify its Members, Managers, officers, employees and agents for all liabilities incurred by such Member, Managers or agent in the ordinary course of the business of the Company or for the preservation of its business or property, to the fullest extent provided or allowed by the Act or otherwise by the laws of Ohio.

54

148.     Pursuant to Section 6.5 of the S&S Operating Agreement and ORC § 1705.32(A), Rostowsky and Schweitzer are entitled to indemnification for "…any threatened, pending, or completed civil, criminal, administrative, or investigative action, suit, or proceeding [by HC Holdings] because [Rostowsky and/ or Schweitzer] is or was a manager, member, partner, officer, employee, or agent of the company…[for] expenses, including attorney's fees, judgments, fines, and amounts paid in settlement that actually and reasonably were incurred …in connection with the action, suit, or proceeding if [they] acted in good faith and in a manner [they] reasonably believed to be in or not opposed to the best interests of the company…".

149.     Pursuant to Section 6.5 of the S&S Operating Agreement and ORC § 1705.32(B), Rostowsky and Schweitzer are entitled to indemnification for "…any threatened, pending, or completed civil, criminal, administrative, or investigative action, suit, or proceeding [by S&S] because [Rostowsky and/ or Schweitzer] is or was a manager, member, partner, officer, employee, or agent of the company…[for] expenses, including attorney's fees, judgments, fines, and amounts paid in settlement that actually and reasonably were incurred …in connection with the action, suit, or proceeding if [they] acted in good faith and in a manner [they] reasonably believed to be in or not opposed to the best interests of the company, except that an indemnification shall not be made in respect of any claim, issue, or matter as to which the person is adjudged to be liable for negligence or misconduct in the performance of his duty to the company unless and only to the extent that the court of common pleas or the court in which the action or suit was brought determines, upon application, that, despite the adjudication of liability but in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnification for expenses that the court considers proper."

150.     At all times while serving as an officer and/ or member manager of S&S,

Rostowsky and Schweitzer acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the company, and did not act with negligence or misconduct in the performance of their duty to S&S, nor have they been so adjudged.

151. S&S and HC Holdings have filed claims against Rostowsky and Schweitzer because they were both members or officers of S&S.

152. Rostowsky and Schweitzer have and continue to suffer Losses and damages because of the pending claims by S&S and HC Holdings.

153. Pursuant to the terms of the S&S Operating Agreement, Rostowsky and Schweitzer are entitled indemnification from S&S for all Losses and damages suffered by them as a result of the pending claims by HC Holdings and S&S including all attorneys fees and expense incurred to date.

154. S&S has breached the terms of the S&S Operating Agreement by failing to indemnify Rostowsky and Schweitzer from all claims raised by HC Holdings and S&S.

155. Rostowsky and Schweitzer have complied with all of their requirements set forth in the S&S Operating Agreement.

156. An actual case or controversy exists because S&S has failed to indemnify Rostowsky and Schweitzer.

157. Pursuant to 28 U.S.C. § 2201, Rostowsky and Schweitzer are entitled to a declaratory judgment which states that:

a. S&S shall indemnify Rostowsky and Schweitzer for all Losses arising out of or relating to any and all claims raised by S&S and HC Holdings in this litigation, including but not limited to, the reasonable attorneys fees incurred.

## COUNT EIGHT – DECLARATORY JUDGMENT

### S&S Restated Operating Agreement Indemnification

158.     Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

159.     Subsequent to the Closing and in accordance with S&S being a constituent and surviving entity of the consolidation, HC Holdings as the sole member, entered into an Amended and Restated Limited Liability Company Agreement for S&S (the "Restated Operating Agreement").

160.     Sections 14 and 15 of the Restated Operating Agreement Provide:

14. **Limitation on Liability**.
(a) Neither the Member nor any of the Managers or Officers are liable for the acts, debts, or obligations of the Company.

(b) No Manager or Officer shall be liable to the Company or the Member for monetary damages except to the extent that (i) it is proved that the Manager or Officer actually received an improper benefit or profit in money, property or services or (ii) a judgment or other final adjudication adverse to the Manager or Officer is entered in a proceeding based on a finding in the proceeding that the Manager or Officer's action, or failure to act, was the result of active and deliberate dishonesty on the part of the Manager or Officer and was material to the course of action adjudicated in the proceeding.

15. **Indemnification**. The monetary liability of the Member and Managers for breach of any duty is limited to the fullest extent permitted by the LLC Law. The Company shall indemnify and hold harmless the Member and each Manager from and against any and all losses, expenses, claims, and demands sustained by reason of any acts or omissions or alleged acts or omissions of the Member or Managers, including judgments, settlements, penalties, fines, or expenses incurred in a proceeding to which the Member or any Manager is a party or threatened to be made a party because the person or entity is or was a member or manager to the fullest extent permitted by law or contract and not subject to any restriction by this Agreement.

161.     Pursuant to ORC § 1705.32(H), Rostowsky and Schweitzer are entitled to all of the protections of Sections 14 and 15 of the Restated Operating Agreement as if they had been a Member and/or Officer of S&S after August 2, 2018.

162.    The creation of the Restated Operating Agreement by HC Holdings is subsequent to and amends and supersedes any obligations of Rostowsky and Schweitzer set forth in the Purchase Agreement.

163.    Pursuant to Sections 14(a) of the S&S Restated Operating Agreement, Rostowsky and Schweitzer are not liable for any debts, acts or obligations of S&S, which shall include but not limited to the Riverstone, Paradigm, Path, Material Contracts, 1099 Reporting, Section 111 Reporting, Stop Loss Reporting, and Georgia Customer claims.

164.    Pursuant to Sections 14(b) of the S&S Restated Operating Agreement, Rostowsky and Schweitzer are not liable for claims by S&S, except to the extent that they received an improper benefit or engaged in deliberate dishonesty.

165.    Pursuant to Sections 15 of the S&S Restated Operating Agreement, S&S is obligated to indemnify and hold harmless Rostowsky and Schweitzer from and against any and all losses, expenses, claims, and demands sustained by reason of any acts or omissions or alleged acts or omissions, including judgments, settlements, penalties, fines, or expenses incurred in a proceeding to which the Member or any Manager is a party or threatened to be made a party because the person or entity is or was a member or manager to the fullest extent permitted by law.

166.    At all times while serving as an officer and/ or member manager of S&S, Rostowsky and Schweitzer acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the company, and did not act with deliberate dishonesty or receive an improper benefit.

167.    S&S and HC Holdings have filed claims against Rostowsky and Schweitzer because they were both members or officers of S&S.

168.    Rostowsky and Schweitzer have and continue to suffer Losses and damages because of the pending claims by S&S and HC Holdings.

169.    Pursuant to the terms of the S&S Restated Operating Agreement, Rostowsky and Schweitzer are entitled: i) have all claims based upon any loss or damage suffered by S&S against them dismissed; ii) have all claims by S&S against them dismissed; and iii) indemnification from S&S for all Losses and damages suffered by them as a result of the pending claims by HC Holdings and S&S including all attorneys fees and expense incurred to date.

170.    S&S has breached the terms of the S&S Restated Operating Agreement by raising said claims and failing to indemnify Rostowsky and Schweitzer from all claims raised by HC Holdings and S&S.

171.    Rostowsky and Schweitzer have complied with all of their requirements set forth in the S&S Restated Operating Agreement.

172.    An actual case or controversy exists because S&S and HC Holdings are pursuing barred claims and S&S has failed to indemnify Rostowsky and Schweitzer.

173.    Pursuant to 28 U.S.C. § 2201, Rostowsky and Schweitzer are entitled to a declaratory judgment which states that:

a.   Rostowsky and Schweitzer are entitled: i) have all claims based upon any loss or damage suffered by S&S against them dismissed; ii) have all claims by S&S against them dismissed; and iii) indemnification from S&S for all Losses and damages suffered by them as a result of the pending claims by HC Holdings and S&S including all attorneys fees and expense incurred to date.

## COUNT NINE – FRAUD IN THE INDUCEMENT

174.    Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

175.    The Company Operation Commitments made by Buff individually, and by and on behalf of HC Holdings, constitute materially false and misleading representations about the Company.

176.    Buff individually, and by and on behalf of HC Holdings, made these materially false and misleading representations the Seller Group with actual knowledge that they were false and misleading when made and as of the Closing Date; or, in the alternative, Buff individually, and by and on behalf of HC Holdings, made these materially false and misleading representations to Purchaser with reckless disregard for their truth.

177.    Buff individually, and by and on behalf of HC Holdings, made these materially false and misleading representations to Seller Group with the intent to induce Seller Group to enter into the Purchase Agreement and proceed with the Closing on the underlying transactions.

178.    Seller Group relied upon these materially false and misleading representations by Buff individually, and by and on behalf of HC Holdings, in deciding to enter into the Purchase Agreement and proceed with the Closing on the underlying transactions.

179.    Seller Group's reliance upon these materially false and misleading representations by Buff individually, and by and on behalf of HC Holdings, was reasonable under the circumstances.

180.    Seller Group would not have entered into the Acquisition Agreement or proceeded with the Closing on the underlying transactions if Seller Group had known these representations were materially false and misleading at the time.

181.     Seller Group has sustained substantial damages as a direct and proximate result of its reliance upon these materially false and misleading representations.

182.     Seller Group claims and is entitled to recover damages incurred as a result of Buff's and HC Holdings' fraud, in an amount to be proven at trial, including compensatory damages, reasonable attorney's fees and expenses, and punitive damages.

## COUNT TEN – BREACH OF CONTRACT
### (The Advisory Agreement)

183.     Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

184.     As part of the Purchase Agreement, S&S and Holdco entered into an Advisory Agreement, whereby Rostowsky and Schweitzer would jointly serve as the Advisor to S&S.

185.     Recognizing that the goodwill and success of S&S is closely tied to the reputation that Schweitzer and Rostowsky had built over 30 years in the industry, S&S expressly agreed that for a period of 5 years "…the Company, for itself and on behalf of its subsidiaries and affiliates, agrees that none of them nor any of their officers, employees, agents or representatives will make any statement or otherwise take any action that would or might reasonably be interpreted as disparaging or critical of the Advisor."

186.     Buff individually and on behalf of S&S, maliciously began making a series of derogatory comments to customers, and others in the industry and that the Sellers were incompetent and that their staff were "Podunk hicks" who did not know what they were doing.

187.     Buff individually and on behalf of S&S, maliciously and regularly communicated to employees that Rostowsky and Schweitzer were incompetent and had mismanaged the business.

188.     Buff's and S&S actions constitute breaches of the Advisory Agreement.

189.    Holdco has complied with all of its requirements set forth in the Advisory Agreement.

190.    As a direct and proximate result of Buff's and S&S's material breach of the Advisory Agreement, Holdco has been damaged in an amount to be determined at trial.

## COUNT ELEVEN – BREACH OF FIDUCIARY DUTY
### (Buff and McGrath)

191.    Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

192.    At all pertinent times hereto Buff and McGrath were agents of HC Holdings.

193.    At all pertinent times hereto Buff and McGrath were fiduciaries of HC Holdings.

194.    At all pertinent times hereto prior Buff and McGrath each owed a duty of loyalty and a duty of care to Holdco as provided for in the Operating Agreement.

195.    As set forth above, Buff and McGrath repeatedly engaged in actions constituting gross negligence, intentional misconduct or breach of the HC Holding Operating Agreement, or breach of any duty owed to Holdco, all in violation of the duty of loyalty and the duty of care owed to Holdco.

196.    Buff and McGrath are each liable to Holdco for the damages directly and proximately caused by the foregoing breaches, in amounts to be proven at trial.

## COUNT TWELVE – CONTRIBUTION
### (Buff, Walker, Esposito  and McGrath)

197.    Counterclaim Plaintiffs restate each and every allegation set forth above as if fully rewritten herein.

198.     To the extent that any Losses were experienced by S&S with respect to the Riverstone claims, the willful misconduct and gross negligence of Walker and Esposito with the consent and intentional disregard of McGrath unnecessarily created such Losses.

199.     To the extent that any Losses were experienced by S&S with respect to the Paradigm, Path, Material Contracts, 1099 Reporting, Section 111 Reporting, Stop Loss Reporting, and Georgia Customer claims, the willful misconduct and gross negligence of Walker and Esposito with the consent and intentional disregard of McGrath unnecessarily created such Losses.

200.     To the extent S&S or HC Holdings would make any recovery on any of their claims, Buff, Walker, Esposito and McGrath are jointly and severally liable to Third Party Plaintiffs for said amounts.

WHEREFORE, Counterclaim Plaintiffs pray for a judgment against HC Holdings in the following manner:

a.   As to Count One, a Declaratory Judgment finding (1) that the Seller Group did not fail to comply with 1099 reporting requirements under the Internal Revenue Code; (2) that the Seller Group did not fail to comply with Section 111 of the MMSEA; (3) that HC Holdings' claims for indemnity lack any merit pursuant to the terms of the Purchase Contract, the Escrow Agreement and as a matter of law; (4) that Pursuant to the terms of the Purchase Agreement and the Escrow Agreement, Holdco is entitled to immediate payment of the total Indemnification Escrow Amount, together with any earnings on the total Indemnification Escrow Amount earned during and after the Escrow Period; (5) that HC Holdings shall indemnify the Seller Group for all Losses arising out of or relating to HC Holdings' breach of the Purchase Agreement and the Escrow

Agreement, including but not limited to, the reasonable attorneys fees incurred by Seller Group arising out of or relating to this litigation.

b.  As to Count Two, a judgment in favor of Counterclaim Plaintiffs awarding monetary damages in an amount to be determined at trial, but no less than $7,000,000.00, plus all attorneys fees costs and expenses incurred by Counterclaim Plaintiffs;

c.  As to Count Three, a judgment in favor of Counterclaim Plaintiffs awarding monetary damages in an amount to be determined at trial, but no less than $2,000,000.00, plus all attorneys fees costs and expenses incurred by Counterclaim Plaintiffs;

d.  As to Count Four, an award of compensatory damages in an amount to be determined at trial, but in excess of $2,000,000.00;

e.  As to Count Five, an award of compensatory damages in an amount to be determined at trial, but in excess of $2,000,000.00;

f.  As to Counts Six and Nine through Twelve an award of compensatory damages in an amount to be determined at trial, but in excess of $2,000,000.00;

g.  As to Count Seven, Declaratory Judgment that S&S shall indemnify Rostowsky and Schweitzer for all Losses arising out of or relating to any and all claims raised by S&S and HC Holdings in this litigation, including but not limited to, the reasonable attorneys fees incurred.

h.  As to Count Eight, Declaratory Judgment that Rostowsky and Schweitzer are entitled: i) have all claims based upon any loss or damage suffered by S&S against them dismissed; ii) have all claims by S&S against them dismissed; and iii) indemnification from S&S for all Losses and damages suffered by them as a result of the pending claims by HC Holdings and S&S including all attorneys fees and expense incurred to date.

64

i. On all Claims, pre- and post-judgment interest, costs, attorneys fees, and all other relief

at law or in equity which the Court deems proper and just.

Respectfully submitted,

/s/ Peter A. Saba
Peter A. Saba (0055535)
Jeffrey M. Nye (0082247)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jmn@sspfirm.com
**Attorneys for Defendants, Counterclaim**
**Plaintiffs and Third Party Plaintiffs.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on all counsel of record via CM/ECF this 3rd[th] day of April, 2020.

/s/ Peter A. Saba
Peter A. Saba (0055535)